Jamestown Banking Company of Jamestown, to use, Appellant, *v.* Conneaut Lake Dock & Dredge Co. et al.

Argued May 7, 1940. Before SCHAFFER, C. J.,
MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*E. Lowry Humes,* with him *Frank D. Prather,* of *Peters & Prather,* for appellant.

*Albert L. Thomas,* of *Thomas & Kiebort,* with him *John I. Kent,* for appellee.

OPINION BY MR. JUSTICE MAXEY, June 24, 1940:

Appellee Harshaw was a partner in a firm known as Conneaut Lake Dock and Dredge Company, of which the other three members were Holcomb, Ehrhart and Mc-Masters. A judgment was entered by confession against all four partners on notes containing warrants of attorney signed, not by appellee, but by Holcomb and Ehrhart, on behalf of the firm. On Harshaw's petition the court below opened the judgment, whereupon this appeal was taken.

The Conneaut Lake Improvement Company was the maker of the two notes on which judgment was entered, totalling $4,826.56. This was also a partnership; its members were Holcomb, Ehrhart and McMasters. Harshaw was not a partner. The Improvement Company gave the two notes to the Dock and Dredge Company in 1922 and 1924 respectively. The latter assigned them for value to appellants' assignor, Jamestown Banking Company. The notes were renewed on January 10, 1927, They bore a written assignment containing both a guarantee of payment and a warrant of attorney authorizing entry of judgment against the assignors. The assignments were signed: "Conneaut Lake Dock & Dredge Co., H. O. Holcomb, Pres., J. P. Ehrhart, Sec." There was no signature by Harshaw or McMasters. The Improvement Company did not make payment, consequently judgment was entered on the assignment and guarantee against the Conneaut Lake Dock and Dredge Company in December, 1929. Whether the judgment was indexed against the four partners individually at that time is not clear from the docket entries.

Partner McMasters died and thereafter, in 1930, execution was issued on the judgment against the partnership property, consisting principally of a lake dredge and machinery. A sale was had and the proceeds, about $1,000, were applied on another judgment held by the bank against the same defendants. For several years nothing was done to collect the judgment from the individual estates of the partners. Negotiations took place for the purpose of liquidating this indebtedness, but they were fruitless. Appellee took the position that he did not benefit from the notes and was not morally or legally obligated to pay them. In 1931 the bank went into liquidation; the appellants, its assignees for the benefit of creditors, represent it in this ligitation. In October, 1934, appellants issued execution against Harshaw personally in an effort to collect the judgment. He thereupon obtained a rule to open the judgment, upon which testimony by depositions was taken.

Appellee's testimony was that he never gave his partners Holcomb or Ehrhart authority to sign the guarantees and warrants of attorney, never knew anything about the transaction until it had been completed, and never ratified the act of his partners nor agreed to pay the notes. Against this appellants produced a number of witnesses whose testimony tended to show that appellee knew the notes had been given originally, that he acknowledged them as firm obligations for which he was liable, and that he undertook negotiations for their liquidation and entered into informal agreements to discharge the indebtedness. The court below held that issues of fact were presented which required determination by a jury, namely, whether appellee had authorized the execution and delivery of the guarantees and warrants of attorney, and, if not, whether he had so ratified them subsequently as to make him liable thereon. Accordingly the judgment was opened.

We find no error in the action of the court. Although

appellee did not sign the warrants of attorney, he was a member of the firm whose signature by other partners necessarily included him as prima facie bound on the obligations. The authorization to enter judgment is not limited to the parties who placed their signatures on the instruments. The prothonotary may look beyond the instrument itself and enter judgment against "the person or persons who executed the same" (Act of Feb. 24, 1806, P. L. 334, 4 Sm. L. 270, sec. 28; 12 PS sec. 739), but this does not mean signatories alone; it includes partners and principals, whose agents have signed for them: *Miller v. Royal Flint Glass Works et al.,* 172 Pa. 70, 33 A. 350; *Harr, Sec. of Banking, et al., v. Bernheimer et al.,* 322 Pa. 412, 185 A. 857; *Myers v. Sprenkle,* 20 Pa. Superior Ct. 549; *Little v. Jeffers,* 42 Pa. Superior Ct. 519. It follows that the judgment entered against appellee in the present instance was on its face regular. It was not void but voidable.

Since Harshaw did not sign the guarantees and warrants of attorney to confess judgment, the burden was on appellants to prove facts sufficient to show either that the instruments forming the basis of the judgment were signed by Holcomb and Ehrhart for the partnership with Harshaw's express authority or consent, or that he subsequently ratified its execution by acquiescence or otherwise. A partner has implied authority only to bind his firm by transactions in the ordinary course of business. As expressed in the Uniform Partnership Act of March 26, 1915, P. L. 18, sec. 9 (59 PS sec. 31), "Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member, binds the partnership. . . .": *Rhodes v. Terheyden et al.,* 272 Pa. 397, 400, 116 A. 364. But for a transaction not in the ordinary course of business a partner has

no implied authority to bind his firm. Such a transaction is a confession of judgment. The same section of the Partnership Act provides: "Unless authorized by the other partners, or unless they have abandoned the business, one or more but less than all the partners have no authority to . . . (d) Confess a judgment . . ." Hence if the instruments on which judgment was entered are considered merely as confessions of judgment, Holcomb and Ehrhart had no implied authority to bind the partnership or its property, much less the individual assets or estate of the appellee Harshaw. Prior to the Uniform Partnership Act it was held that such a confession of judgment would bind the partnership assets and likewise the individual assets of the partners who confessed judgment, but not the estate of those who did not: *Funk v. Young,* 241 Pa. 72, 88 A. 291; s. c. 254 Pa. 548, 99 A. 76; *Feighan v. Sobers et al.,* 239 Pa. 284, 80 A. 1090; *Boyd v. Thompson & Coxe,* 153 Pa. 78, 25 A. 769. The change the Act made in the law in this respect is pointed out in *Fairman Bros., to use, v. Ogden Gas Co.,* 106 Pa. Superior Ct. 130, 135, 161 A. 634. Even if the warrants of attorney to confess judgment are disregarded, the assignments remain guaranties executed by only two of the four partners. They had no implied authority to bind the firm or appellee, for fewer than all the partners cannot bind the firm as guarantor to a third person without express authority from the remaining partners or without such conduct on their part as amounts to ratification: *McQuewans v. Hamlin,* 35 Pa. 517; *Hamill v. Purvis,* 2 P. & W. 177; *Shaaber et al. v. Bushong & Bro.,* 105 Pa. 514. This is because a guaranty is usually not given in the ordinary course of a partnership business: 47 C. J. 878, sec. 355.

It follows that upon Harshaw's denial of having given Holcomb or Ehrhart authority to execute the assignments, the burden was on the plaintiff in the judgment to prove express authority on their part or facts indi-

cating ratification of their acts by Harshaw. There is here no evidence of such express authority. On the question of ratification a conflict arose which could be resolved only by a jury trial.

Appellants contend that appellee was guilty of such laches in seeking to open the judgment that the rule should have been discharged on this ground. It is said that appellee knew the judgment had been entered by the middle of 1930 at the latest, yet he waited until October, 1934, before presenting his petition to the court. The testimony of the witnesses for both parties showed circumstances which tended to justify this delay. During much of this period the parties were engaged in negotiations which gave rise to hopes that the partnership liabilities of every character could be adjusted to the satisfaction of all concerned. Appellants made no effort to levy against any of the individual property of the respective partners or their estates. The record indicates that appellee was led to believe that appellants had no intention of holding him individually responsible, so far as his own property was concerned. When execution was ultimately issued against him, he promptly did what was necessary to protect his interests. The opening of a judgment is in its nature an equitable proceeding addressed to the discretion of the court, and only where there is an abuse will its decision be disturbed: *Pierce v. Kaseman*, 326 Pa. 280, 192 A. 105; *Rambo B. & L. Assn. v. Dragone*, 311 Pa. 422, 166 A. 888; *Tressler v. Emerick*, 278 Pa. 128, 122 A. 229.

The order is affirmed.